# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

EVAN FLANAGAN,

    Plaintiff,

v.                                        Case No. 8:22-cv-2452-WFJ-AEP

MEDMETRY, INC.;
RICHARD ALVAREZ; and
AMIN KOLBEHDARI,

    Defendants.
_____/

## ORDER

Before the Court is Defendant Medmetry, Inc.'s Motion to Dismiss Counts II and III (Dkt. 14) of Plaintiff Evan Flanagan's Complaint (Dkt. 1). Mr. Flanagan has responded in opposition (Dkt. 20). Upon careful consideration, the Court denies Medmetry's Motion.

## BACKGROUND

Mr. Flanagan began working for Medmetry as a healthcare staffing sales employee in the beginning of April 2020. Dkt. 1 at 9. Medmetry initially paid Mr. Flanagan a salary of $72,000. *Id.* On or about July 31, 2020, Mr. Flanagan's pay structure changed when his salary increased to $100,000, and he became eligible for commissions pursuant to a "Commission Bonus Agreement" (the "Agreement"). *Id.*

The Agreement provided for a "Monthly Commission Bonus" "equal to 15 percent of the Monthly Applicable Healthcare Staffing Net Profits[.]" Dkt. 1-1 at 1. The Agreement defines "Monthly Applicable Healthcare Staffing Net Profits" as "gross revenues received by [Medmetry] during a calendar month on account of its healthcare staffing services," reduced by a number of different expenses. *Id.* "[I]n the event the formula for determining Monthly Applicable Healthcare Staffing Net Profits . . . yield[ed] a loss . . . the amount of such loss [would] be carried forward further reduc[ing] the Monthly Applicable Healthcare Staffing Net Profits . . . until the loss [was] fully absorbed." *Id.* at 2. Medmetry was to calculate and pay the Monthly Commission Payment "as part of the next full pay period immediately following the end of [each] month." And, "[u]pon request, Medmetry [was to] provide [Mr. Flanagan] with the components of, and the records underlying, its calculation of a particular month's Monthly Commission Bonus[.]" *Id.* "In the event of termination, any accrued but unpaid Monthly Commission Bonus that would otherwise have been payable to [Mr. Flanagan] [would] be paid on the next date on which a Monthly Commission Bonus amount would have otherwise been payable . . . prorated through the date [Mr. Flanagan's] employment terminate[d]." *Id.* at 3.

Mr. Flanagan claims that Medmetry breached the Agreement in a number of ways. First, although Mr. Flanagan was paid two commission payments pursuant to a separate commission agreement (which Mr. Flanagan claims is "reflected in email

in Defendants' exclusive possession"), Medmetry allegedly never paid him commission pursuant to the Agreement. Dkt. 1 at 10 n.1, 19. Mr. Flanagan believes that his commissions were artificially reduced by Medmetry through a fraudulent reduction of revenues and a fraudulent increase in expenses in Medmetry's Monthly Commission Payment calculations. *Id.* at 13. Second, despite repeated requests, Medmetry allegedly refused to provide the documents necessary for Mr. Flanagan to "independently verify the specific amounts of commissions due for each month from April 2020 to [his termination]." *Id.* at 16. Instead, Medmetry purportedly provided incomplete and "presumptively fraudulent data to [Mr. Flanagan], expecting him to rely on it and accept less commissions than he was due." *Id.* at 13. Third, Medmetry allegedly failed to calculate or pay Mr. Flanagan commissions for the entire month of July 2022 (his final month of employment at Medmetry). *Id.* at 17–18.

Mr. Flanagan also claims that Medmetry terminated his employment in retaliation for his complaints and to avoid paying him owed commissions. *Id.* at 18. Around May 2022, Medmetry requested that Mr. Flanagan sign an "At-Will Employment Agreement" (the "Proposed Agreement"). *Id.* at 17. The Proposed Agreement allegedly included a non-compete provision and "effectively sought to claw back substantial commissions already owed to [Mr. Flanagan.]" *Id.* Mr. Flanagan opted not to sign the Proposed Agreement, requested the commissions

owed to him under the pre-existing Agreement, and insisted on receiving records to verify his Monthly Commission Payments. *Id.* at 17–18. Mr. Flanagan "made several complaints in writing[,]" but Medmetry refused to provide the documents he requested. *Id.* at 18. On July 15, 2022, Mr. Flanagan provided his two weeks' notice. *Id.* Medmetry terminated Mr. Flanagan the same day. *Id.*

Despite regularly working more than 40 hours a week, Mr. Flanagan claims that Medmetry never paid him overtime. *Id.* at 9. Similarly, Mr. Flanagan claims that Medmetry never paid "any commissions due under the Agreement." *Id.* at 19.

On October 27, 2022, Mr. Flanagan brought his Complaint against Defendants Medmetry, Richard Alvarez, and Amin Kolbehdari.[1] Mr. Flanagan asserts three Counts: Count I—Unpaid Overtime in Violation of the Fair Labor Standards Act ("FLSA") against Medmetry, Mr. Alvarez, and Mr. Kolbehdari; Count II—Breach of Contract against Medmetry; and Count III—Breach of Covenant of Good Faith and Fair Dealing against Medmetry. *Id.* at 19–23.

Medmetry now moves to dismiss Counts II and III of Mr. Flanagan's Complaint. Dkt. 14.

---

[1] "During the relevant time period, Defendant Alvarez was Medmetry's Chief Executive Officer." Dkt. 1 at 4. "During the Relevant time period, Defendant Kolbehdari was Medmetry's Chief Operating Officer." *Id.* at 5.

## LEGAL STANDARD

A complaint withstands dismissal under Rule 12(b)(6) if the alleged facts state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard does not require detailed factual allegations but demands more than an unadorned accusation. *Id.* All facts are accepted as true and viewed in the light most favorable to the Plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

At the dismissal stage, a court may consider matters judicially noticed, such as public records, without converting a defendant's motion to one for summary judgment. *See Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 52 (11th Cir. 2006). Additionally, documents may be considered at the dismissal stage if they are central to, referenced in, or attached to the complaint. *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Documents attached to a motion to dismiss may also be considered if the documents are (1) central to the plaintiff's claim, and (2) undisputed (if their authenticity is not challenged). *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

## DISCUSSION

Medmetry offers two arguments for collectively dismissing Counts II and III, one argument for individually dismissing Count II, and one argument for individually dismissing Count III. The Court will address each in turn.

### I.     Shotgun Pleading (Counts II and III)

Medmetry first argues that Mr. Flanagan's Complaint constitutes an impermissible shotgun pleading "because it requires Medmetry to speculate which factual allegations pertain to each count against it." Dkt. 14 at 5. The Court disagrees.

Complaints that violate Federal Rules of Civil Procedure 8(a)(2) or 10(b) "are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has recognized four basic types of shotgun pleadings: (1) a complaint that contains multiple counts where each count adopts the allegations of all preceding counts; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a complaint that fails to separate into different counts each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions or which of the defendants the claim is brought against. *Id.* at 1321–23. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

Mr. Flanagan's Complaint does not fail in this respect. Mr. Flanagan's Complaint contains three counts: an FLSA claim (Count I), a breach of contract

claim (Count II), and an implied covenant claim (Count III). Only Mr. Flanagan's FLSA claim targets more than one Defendant, and Mr. Flanagan's Complaint separates the factual allegations underlying it from the factual allegations underlying his other claims. While Mr. Flanagan's Complaint does not separate the factual allegations underlying his breach and implied covenant claims from each other, this cannot facilitate meaningful confusion for Medmetry. Mr. Flanagan's breach and implied covenant claims are inherently connected to the same set of facts and are asserted against one and the same Defendant—Medmetry. This much is clear from the face of Mr. Flanagan's complaint. It is not uncommon for breach and implied covenant claims to share a factual basis in this manner, nor does it cause undue confusion here. Medmetry has adequate notice of the claims against it and the grounds upon which each claim rest.

## II.     Heightened Pleading Standard (Counts II and III)

Medmetry's second argument for collectively dismissing Counts II and III is based on Mr. Flanagan's allegations of fraudulent conduct. Medmetry maintains that, because Mr. Flanagan's breach and implied covenant claims are based in part on these allegations, Mr. Flanagan's claims should have been pled with particularity under Federal Rule of Civil Procedure 9(b). Dkt. 14 at 6–9. The Court disagrees.

"The threshold question to determine whether the particularity requirements of Rule 9(b) apply to a specific claim is whether that claim sounds in fraud."

7

*Symphony, LLC v. Romeu*, No. 1:18-CV-22511-KMM, 2019 WL 2107288, at *2 (S.D. Fla. Mar. 13, 2019) (citations omitted). A claim sounds in fraud when "a plaintiff alleges that a defendant has either conspired or engaged in a scheme to make fraudulent statements" or when "a plaintiff alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of that claim." *Id.* (citations and internal quotations omitted). "[M]ere passing references to fraud in a complaint [do] not make [the subject claim] a fraud-based claim such that heightened pleading standards apply." *Id.* (citations and internal quotations omitted).

Mr. Flanagan's breach and implied covenant claims are not subject to Rule 9(b)'s heightened pleading standard. As an initial matter, it is generally the case that "[b]reach of contract claims do not sound in fraud, so Rule 9(b) does not apply." *Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 873 (11th Cir. 2023). This general principle holds here because (1) Mr. Flanagan's Complaint only contains passing references to fraudulent conduct, and (2) Mr. Flanagan's breach and implied covenant claims do not solely rest on any unified course of fraudulent conduct or scheme by Medmetry. While Mr. Flanagan's Complaint does suggest that some fraud may have occurred in Medmetry's Monthly Commission Payment calculations, Mr. Flanagan's breach and implied covenant claims ultimately rest on Medmetry's alleged underpayment of commissions and refusal to provide verifying records. Discovery may or may not uncover an actionable claim for fraud underlying

8

this alleged underpayment. Either way, Mr. Flanagan has been careful to preserve this potential claim rather than plead it. Dkt. 1 at 13 n.2. This cannot serve as grounds for dismissing Mr. Flanagan's Complaint.

### III. Failure to State a Claim (Count II)

Medmetry next argues that Count II fails to state a claim for breach of contract because Mr. Flanagan's Complaint only offers speculation concerning whether Mr. Flanagan suffered damages. Dkt. 14 at 9–11. This argument is unavailing.

As mentioned above, a complaint withstands dismissal under Rule 12(b)(6) if the alleged facts state a claim for relief that is "plausible on its face." *Ashcroft*, 556 U.S. at 678 (2009) (citations omitted). All facts in a complaint are accepted as true and viewed in the light most favorable to the Plaintiff. *Pielage*, 516 F.3d at 1284. Accepting as true that "[Mr. Flanagan's] commissions for the month of July 2022 were substantial" and that "Medmetry has not paid [Mr. Flanagan] any commissions due under the agreement[,]" Mr. Flanagan has plausibly asserted damages as an element of his breach claim. Dkt. 1 at 18–19. Nothing more is required at the motion to dismiss stage. And this is especially true where Mr. Flanagan has alleged that Medmetry effectively prevented him from doing so by withholding financial records that Mr. Flanagan had a contractual right to review.

### IV. Failure to State a Claim (Count III)

Medmetry finally argues that Count III fails to state an implied covenant claim because (1) an implied covenant claim cannot be maintained in the absence of a breach claim, and (2) Mr. Flanagan has failed to assert a breach claim. As established above, Mr. Flanagan has asserted a viable breach claim. His implied covenant claim is viable as well.

### CONCLUSION

Mr. Flanagan has brought an adequate Complaint against Medmetry. The Court will not dismiss it. All the same, the Court will not grant Mr. Flanagan the attorney's fees and costs incurred in responding to Medmetry's Motion.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**: Defendant Medmetry's Motion to Dismiss (Dkt. 14) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on February 17, 2022.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record